UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KAREN S. ROHDE,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>    Defendant. | CASE NO.   C04-5156RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 29, 2005 |

    Plaintiff, Karen S. Rohde, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

    Plaintiff currently is fifty-two years old.[1] Tr. 59. She has a college education and past work experience as an actuarial technician. Tr. 88, 93.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1   Plaintiff filed an application for disability insurance benefits on August 24, 1999, alleging disability
2   as of July 22, 1998, due to back, hand and tailbone pain, obesity, sarcoidosis, and diabetes. Tr. 27, 77, 87.
3   Her application was denied initially and on reconsideration. Tr. 59-62, 66, 72.  She requested a hearing,
4   which was held on June 15, 2001, before an administrative law judge ("ALJ"). Tr. 359.  At the hearing,
5   plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 359-87.

On July 13, 2001, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had a "severe" impairment consisting of sarcoidosis associated with a mild restrictive lung defect and chronic back pain due to a thoracic and lumbar spine disorder with residuals of multiple surgeries;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which did not preclude her from performing her past relevant work.

Tr. 41-42.  Plaintiff's request for review was denied by the Appeals Council on January 23, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On March 23, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed for an award of benefits for the following reasons:

(a) the ALJ erred in finding plaintiff did not have a severe mental impairment;

(b) the ALJ erred in assessing plaintiff's residual functional capacity;

(c) the ALJ erred in evaluating plaintiff's credibility;

(d) the ALJ erred in evaluating the lay witness statement in the record; and

(e) the ALJ erred in finding plaintiff capable of performing her past relevant work.

For the reasons set forth below, however, the undersigned finds the ALJ properly determined plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the

1  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to
2  support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is
3  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson</u>
4  <u>v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than
5  a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.
6  1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than
7  one rational interpretation, the court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d
8  577, 579 (9th Cir. 1984).

9  I.      <u>The ALJ Properly Found Plaintiff Had No Severe Mental Impairment</u>

10         To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step
11 sequential evaluation process. 20 C.F.R. § 404.1520.  At step two, the ALJ must determine if an impairment
12 is "severe". <u>Id.</u>  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or
13 physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a); Social Security Ruling
14 ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to
15 do most jobs."[2] 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

16         An impairment is not severe only if the evidence establishes a slight abnormality that has "no more
17 than a minimal effect on an individual[']s ability to work."  <u>See</u> SSR 85-28, 1985 WL 56856 *3; <u>Smolen v.</u>
18 <u>Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff
19 has the burden of proving that her "impairments or their symptoms affect [her] ability to perform basic work
20 activities." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1159-60 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599,
21 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used
22 to dispose of groundless claims.  <u>Smolen</u>, 80 F.3d at 1290.

23         The ALJ found plaintiff had no severe mental impairment, stating in relevant part as follows:

24    The evidence also does not document a "severe" mental impairment.  The evidence
      shows that the claimant has been treated with Zoloft for depression as a result of her
25    back problem.  Dr. [Christopher] Meagher, a psychologist who first evaluated her in
      August 1999, diagnosed her with chronic pain disorder associated with both general

---

27  [2]They include the ability to: understand, carry out, and remember simple instructions; use judgment; respond
28  appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R.
    §404.1521(b).

REPORT AND RECOMMENDATION
Page - 3

> medical condition and psychological factors. Despite that diagnosis, however, Dr. Meagher gave her a favorable prognosis with continued use of anti-depressant and behavorial treatment. Subsequent evidence shows some improvement in her depression. In his letter to Dr. [Peter L.] Taylor in February 2000, Dr. Meagher wrote that the claimant's behavioral coping strategies "remained questionable," that her "progress was quite limited" in terms of coping with her pain, but that she reported a slight decrease in her depression. Dr. Meagher recommended a more structured program to "energize her toward further participation.["]
>
> There is nothing in the evidence to indicate that the claimant pursued a more structured program that was recommended by Dr. Meagher or that she continues to receive treatment from Dr. Meagher. She continues to take Prozac, but this is prescribed by [Dr.] Taylor, who, although a physician, is not a psychiatrist or a similarly trained mental health specialist. Moreover, the most recent psychological evaluation in the record demonstrates only minimal functional limitation from a mental standpoint. The claimant was evaluated in March 2000 by Dr. [Andrew] Elliot, a psychiatrist. Based on his evaluation and observations, Dr. Elliott concluded that the claimant did not meet the "DSM-IV criteria" for depression, and instead diagnosed somatoform disorder. More importantly, Dr. Elliott concluded that the claimant should be able to follow work rules, relate to co-workers, deal with the public, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations as she did throughout the examination, and understand and remember and carry out detailed and even complex job instructions. Dr. Elliott's findings and conclusions, and the testimony at the hearing, establish that the claimant is not significantly limited by a mental impairment. She testified mostly about her physical medical problems, and, in fact, acknowledged that the psychological treatment with Dr. Meagher helped because she is now able to force herself to relax and do things in little segments. Her only complaints about her mood were that she gets irritable and withdrawn and that she has noticed changes in her memory. . . .
>
> Deferring to the assessment of Dr. Kristina Harrison, a State Agency consulting psychologist reviewing the evidence in April 2000, it is found that, from a mental standpoint, the claimant has only "slight" restriction of activities of daily living and no limitation in the remaining three functional areas (i.e., social [functioning], concentration[, persistence or pace], episodes of decompensation). Although Dr. Harrison did not personally evaluate the claimant, her assessment is given great weight since [it] is substantiated by and is consistent with the pertinent and most recent [sic] in the record.

Tr. 34-35 (footnotes omitted). The undersigned finds the ALJ's determination on this issue to be supported by the substantial evidence in the record.

Plaintiff first argues that there is no indication the ALJ considered the evidence related to her back impairment in combination with her mental limitation. See Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (at step two, ALJ must consider combined effect impairments on claimant's ability to function, without regard to whether each impairment alone is sufficiently severe). It appears, however, that the ALJ did in fact consider the combined effect of plaintiff's mental and physical impairments, noting, as set forth above, the findings of Dr. Meagher. Although plaintiff argues that limitations stemming from her alleged mental impairments do rise to the requisite level of severity, as discussed in further detail below, the ALJ

REPORT AND RECOMMENDATION
Page - 4

properly found that they only minimally limited her.

For example, when Dr. Meagher first examined plaintiff in late August 1999, he found her in "mild psychological distress," with only a suggestion of "moderate dysphoria" and "no indications of appreciable thought or cognitive disorder." Tr. 215. Psychological testing indicated "a mild-to-moderate degree of general psychological distress or symptomatology" as well. Tr. 216. Such testing also suggested plaintiff was an individual "experiencing considerable symptoms of depression and anxiety," and Dr. Meagher felt there was "significant emotional fallout secondary to her chronic back problem which likely" contributed to "distress" and was "capable of impeding optimal recovery and functioning." Tr. 216-17.

These findings, however, do not necessarily indicate that Dr. Meagher felt plaintiff had more than minimal limitations in her ability to perform basic work activities. That is, Dr. Meagher did not state that plaintiff's "emotional fallout" and distress actually impeded her ability to recover and function, or whether "optimal" recovery and functioning would be required for her to be able to do such activities. In any event, as noted by the ALJ, Dr. Meagher judged plaintiff's prognosis for "learning to better manage and control her condition" to be "fair-to-good." Tr. 218. In early February 2000, furthermore, plaintiff acknowledged "a slight decrease in depression." Tr. 257. While Dr. Meagher stated the treatment in which she had been participating "appeared to be insufficient to motivate her to participate in her own recovery," he also noted her "follow through" with "behavioral coping strategies remained questionable." Tr. 257-58. Again, there is no indication in Dr. Meagher's report that plaintiff's issues with motivation regarding, and participation in, her own recovery in any way prevented her from being able to do basic work activities.

Plaintiff next argues the ALJ misapplied the appropriate legal standard when he suggested that Dr. Elliott's findings and conclusions establish she was "not significantly limited by a mental impairment." Tr. 35. It is not clear, however, that the ALJ actually misapplied that standard. As noted above, 20 C.F.R. §§ 404.1520(c) and 404.1521(a) and SSR 96-3p all state expressly that an impairment is not "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities, essentially the same words the ALJ used in his opinion. In this context, stating that an impairment does not significantly limit a claimant's mental or physical abilities, is essentially the flip side of stating that the impairment no more than minimally affects the claimants abilities in those areas. The ALJ, furthermore, also specifically stated that the opinion of Dr. Elliott, the most recent in the record, demonstrated "only minimal functional

REPORT AND RECOMMENDATION
Page - 5

limitation from a mental standpoint." Tr. 35.

Plaintiff also takes issue with the ALJ's reliance on Dr. Elliott's opinion, arguing that such reliance is highly questionable in light of Dr. Elliott's findings. Specifically, plaintiff asserts that the diagnosis of somatoform disorder Dr. Elliott provided is not supportable, given the absence of any psychological testing findings in his report and plaintiff's history of chronic back pain and spine fusion. First, with respect to the need for psychological testing, the diagnoses and observations of psychiatrists and psychologists constitute competent evidence when mental illness is the basis of a disability claim:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)) (emphasis added); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence). Thus, it is not appropriate to reject the opinion of an examining psychologist or psychiatrist merely because there are no formal psychological testing findings in his or her report.

In addition, it is entirely reasonable for Dr. Elliott to have diagnosed plaintiff with a somatoform disorder rather than with depression. Tr. 246. The undersigned finds there is no inconsistency in Dr. Elliott opining on the one hand that plaintiff may be limited to some extent by her back injury (Tr. 247), and on the other hand, that the severity or duration of her alleged limitations cannot be explained by that injury (Tr. 246). Indeed, Dr. Elliott did not indicate to what extent he felt that plaintiff's ability to understand, remember and carry out detailed and complex job instructions would be limited by her physical limitations, or on what grounds he based that opinion. Plaintiff further argues that the medical evidence in the record concerning her back impairment contradicts Dr. Elliott's diagnosis of somatoform disorder. As discussed below, however, the medical evidence in the record indicates that plaintiff's back impairment and related limitations are far from disabling.

REPORT AND RECOMMENDATION
Page - 6

Plaintiff also argues that considering the nature of her occupation as an actuarial technician, it is not reasonable for Dr. Elliott to suggest that the symptoms of depression brought on by her chronic back pain would have had only a minimal effect upon her ability to perform her job. However, plaintiff does not set forth any explanation as to why she feels such a suggestion is unreasonable. The undersigned thus finds no reason to question the finding of Dr. Elliott, that she did "not meet [the] DSM VI criteria for depression." Tr. 247.

While Dr. Meagher did perform psychological testing on plaintiff, and found that testing suggested "an individual experiencing considerable symptoms of depression" (Tr. 216), he did not actually diagnose her with that disorder, and, even if he had, the ALJ was not required to chose his diagnosis over that of Dr. Elliot. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where opinion of examining physician is based on independent clinical findings, it is within ALJ's discretion to disregard conflicting opinion in another examining physician's diagnosis). As discussed above, furthermore, the findings and conclusions of Dr. Meagher fail to show plaintiff's mental impairments more than minimally affected her ability to perform basic work activities.

In any event, regardless of the diagnosis, Dr. Elliott, like Dr. Meagher, essentially found plaintiff had no mental functional limitations that affected her ability to perform basic work activities, concluding in relevant part as follows:

> She should be able to follow work rules, relate to coworkers and be able to deal with the public with the exception of her limitations as to her back injury. She is able to maintain attention and concentration, and complete her personal appearance and hygiene. She is able to manage her money and finances and she is able to behave in an emotionally stable manner and should be able to relate predictably in social situations, as she did throughout the examination.
>
> She should be able to understand and remember and carry out detailed, and complex job instructions, with the exception of limitations of her back injuries. She currently is on Prozac; certainly this is being very helpful to her and I would expect her to remain at her current level of functioning and with ongoing psychiatric treatment and follow up.

Tr. 247. Thus, although Dr. Elliott indicated that he thought plaintiff might have certain problems due to her back impairment, he gave no indication that such limitations were related to or affected by any mental impairment.

Plaintiff further argues the ALJ erred in relying on the opinion of Dr. Harrison, stating it is obvious she relied on the opinion of Dr. Elliott. The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

REPORT AND RECOMMENDATION
Page - 7

Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Magallanes, 881 F.2d at 75. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

REPORT AND RECOMMENDATION
Page - 8

1    Although Dr. Harrison, as with Dr. Elliott, diagnosed plaintiff with a somatoform disorder (Tr. 248,
2 253), it is mere speculation to suggest that she relied solely on the opinion of Dr. Elliott in doing so.  In any
3 event, it would have been proper for Dr. Harrison to rely on his opinion, as it is part of the medical record
4 she was tasked with reviewing and consistent with the other medical evidence in the record, including the
5 opinions of Dr. Meagher, regarding plaintiff's work-related mental functional limitations.  In addition, as
6 discussed above, the ALJ did not err in also relying at least in part on the opinion of Dr. Elliott to find that
7 plaintiff had no severe mental impairment.  Because Dr. Elliott's opinion constitutes "other independent
8 evidence in the record," the opinion of Dr. Harrison may be considered substantial evidence as well.  Lester
9 at 830-31; Tonapetyan, 242 F.3d at 1149.

10   Plaintiff also argues that in relying on the opinions of Dr. Elliott and Dr. Harrison, the ALJ erred in
11 discounting the opinions of her treating sources as to the nature and severity of her depression.  While it is
12 true that in general a treating physician is given more weight than those who do not treat the claimant, it is
13 also true that more deference is given to the "opinion of a specialist about medical issues related to his or
14 her area of specialty" than to those who are not specialists.  Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th
15 Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(5)).  Thus, to the extent that the opinions of Dr. Elliott and Dr.
16 Harrison are supported by substantial evidence in the record, which they are as discussed herein, the ALJ
17 did not err in relying on them in evaluating plaintiff's mental impairments and limitations.

18   In addition, plaintiff points to nothing in the records of his treating sources that establishes she has
19 greater mental limitations than those found by Dr. Elliott and by Dr. Harrison, who found plaintiff had no
20 severe mental impairment.  Tr. 248.  While it may be true that Dr. Paul A. Anderson and Dr. Taylor, two of
21 plaintiff's treating physicians, noted that she exhibited at various time symptoms of depression (Tr. 173,
22 191), merely having such symptoms is not the same as having symptoms that have more than a minimal
23 effect on the ability to perform basic work activities.  Indeed, nowhere in the diagnostic notes or treatment
24 records of those physicians is there any indication that her symptoms of depression have had such an effect.
25 See 173, 191, 203, 236, 239.  For example, while plaintiff reported having "crying spells" in late August
26 1998, this was only after she stopped taking her Zoloft,[3] and in early July 1999, Dr. Taylor commented that

27

28         [3]Other medical evidence in the record also indicates medication has been able to adequately control plaintiff's symptoms of depression.  See, e.g., Tr. 236.

REPORT AND RECOMMENDATION
Page - 9

1  she appeared to be only "somewhat depressed." Tr. 173, 191.

2  II.     The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Based on his evaluation of the medical evidence in the record concerning plaintiff's impairments (Tr. 34-39), the ALJ assessed her with the following residual functional capacity:

> [T]he claimant retains the residual functional capacity for light work, subject to the following restrictions: lifting/carrying up to 20 pounds, with lifting from the floor limited to no bending from the waist, but with the back straight and at a 45-degree angle to the ground; only occasional picking up of any items from the level (i.e., less than 1/3 of the day, almost to the point of rare occasions); no repetitive twisting and bending; no climbing or crawling; sitting, standing, or walking consistent with light work, but with the opportunity to get up every 30-40 minutes to relieve pain or discomfort; and working only in a clean-air environment (i.e., no exposure to pollutants, extremes of temperature, and high humidity). She has no limitations of mental functioning.

Tr. 37. Plaintiff first argues the above residual functional capacity assessment is improper, because the ALJ inappropriately discounted her mental functional limitations. As discussed above, however, the ALJ properly found plaintiff had no severe mental impairment. In addition, while it is true that the ALJ must consider all severe and non-severe impairments and limitations in assessing plaintiff's residual functional capacity, also as discussed above, the ALJ did not err in finding plaintiff's mental impairments caused no

more than a minimal effect on her ability to perform basic work activities. SSR 96-8p, 1996 WL 374184 *5. As such, the ALJ also did not err excluding any mental limitations from that assessment, as there were no relevant mental limitations to include therein.

Plaintiff also argues the above residual functional capacity assessment is improper, as the ALJ erred in evaluating the medical evidence in the record regarding her physical limitations. First, plaintiff asserts the ALJ improperly found she "no longer has significant thoracic or lumbar spine problems." Tr. 38. The undersigned disagrees. Dr. Anderson noted plaintiff generally responded well to treatment and was making progress with respect to her back impairment following surgical procedures performed in 1995, 1997 and 1998. Tr. 173-80. In mid-October 1998, plaintiff reported having only a "mechanical-type pain," and Dr. Anderson noted that she was "doing rather well." Tr. 171. She had "minimal tenderness to palpation," and x-rays showed "good overall alignment of her spine." Id. While it is true Dr. Anderson stated he thought plaintiff was "disabled" and that she would "not be able to work 8-hour shifts," he did think that "perhaps [in] 6 months, she could return to work." Id. He also told plaintiff that he "did not think she'd have to be on permanent disability." Id.

Plaintiff argues the ALJ gave no reasons for rejecting Dr. Anderson's findings that she was disabled and unable to work an 8-hour work day. To be found disabled, however, plaintiff must establish that she is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). As noted above, Dr. Anderson's opinion that plaintiff was disabled is qualified by his statements that he thought she might be able to return to work in as little as six months and that he did not feel she was permanently disabled.

It is true that Dr. Anderson did state in mid-September 1998, that plaintiff had "significant pain," which "necessitated backing off her hours per day," and that plaintiff reported in mid-July 1999, that she could not sit for more than an hour without developing "diffuse back pain." Tr. 172, 191. However, Dr. Anderson found that plaintiff was "in no distress" in mid-July 1999, that her back was "well healed with minimal tenderness," and that she remained "neurologically intact." Tr. 191. Accordingly, he diagnosed her as only having "mechanical low back pain of uncertain etiology." Id. Contrary to plaintiff's assertions,

1  therefore, Dr. Anderson's diagnostic notes do show substantial improvement in her back. In addition, with
2  respect to plaintiff's July 1999 statement, as discussed below, the ALJ properly discounted her credibility
3  regarding the nature and severity of her pain and other symptom complaints.

4        Plaintiff also takes issue with the ALJ's error in attributing to Dr. Anderson a statement Dr. Taylor
5  had made in mid-August 1999, that she had not recovered more of her function due in part to her "lack of
6  physical fitness." Tr. 38, 203. The undersigned finds this error to be harmless, however, as, although it was
7  not made by Dr. Anderson, it was provided by Dr. Taylor, who, like Dr. Anderson, is a treating physician.
8  See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004)
9  (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ
10 committed harmless error). Plaintiff argues that Dr. Taylor did not otherwise indicate her back impairment
11 had significantly improved, but Dr. Taylor noted that her pain was not "anywhere near as severe as it was
12 prior to her initial surgery." Tr. 203. He also found her to be neurologically intact, with "no significant
13 areas of tenderness." Tr. 203-04. Thus, as with the findings of Dr. Anderson noted above, he concluded
14 plaintiff was stable, with only "mechanical back pain." Tr. 204.

15       Plaintiff further argues the ALJ improperly evaluated the medical evidence in the record regarding
16 her problems with arthritis. The ALJ found that no manipulative restrictions were appropriate or justified
17 based on that evidence. Tr. 37-38. The ALJ's determination on this issue is supported by the substantial
18 evidence in the record. While it is true that it appears plaintiff was referred to Dr. J.W. Black in order to
19 evaluate her lung impairment, he did examine her hands and ankles in response to her complaints of pain
20 and soreness in those areas and found no abnormalities there. Tr. 334. In addition, Dr. Yun-Sun Choe, who
21 does appear to be an arthritis specialist, found that although plaintiff had some tenderness and swelling in
22 her ankles, she had good range of motion in her shoulders, elbows, wrists, hips and knees. Tr. 305.

23       Further, no other medical source in the record, including plaintiff's treating physicians, indicated that
24 she had any significant limitations due to arthritis or other degenerative joint disease. Dr. Michael L.
25 Matlock who saw plaintiff from mid-October to late November 2000, for complaints of joint pain, did find
26 she had some pain with full extension of her right elbow and swelling and effusion in her ankles. Tr. 315-19.
27 However, there was no pain, swelling, effusion or inflammation in any of her other joints, nor did she have
28 any limitations in her range of motion. Id. She was noted to walk without any limp in late October 2000,

REPORT AND RECOMMENDATION
Page - 12

1  and her hands and wrists looked "fine" in early November 2000. Tr. 318-19. Similar findings were made in
2  late November 2000, and plaintiff's arthritis was noted to be "improving." Tr. 315. Dr. Sarah A. Lux also
3  had diagnosed plaintiff with degenerative joint disease in her knees, but did not indicate that she was limited
4  in any way because of that diagnosis. Tr. 228.

Lastly, plaintiff argues the ALJ failed to consider the effects of her obesity and heart disease on her residual functional capacity. Again, however, plaintiff's argument is without merit. Although plaintiff has been diagnosed as being obese, the medical evidence in the record supports the ALJ's determination that "her weight has not posed a significant problem with her ability to work." See Tr. 149-50, 154, 160, 175, 178, 192, 211, 228, 235, 334. Dr. Lux did note it was "[d]ifficult working" with plaintiff on her obesity due to "her difficulty with activity," but did not indicate whether the difficulty with activity was due to her obesity or to another impairment, or how that difficulty affected her ability to work. Tr. 228. Indeed, while Dr. Anderson described plaintiff as being "very obese" in mid-April 1999, he also noted that she moved "easily around the examination room." Tr. 192. Similarly, there is nothing in the medical evidence in the record to suggest that plaintiff's heart or lung condition has resulted in any significant limitations. Tr. 146, 150, 159, 227-28, 235-36, 238-39, 241, 274, 277, 316, 318, 329, 331, 334, 337.

III.     The ALJ Properly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (9th Cir. 1996). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence

REPORT AND RECOMMENDATION
Page - 13

as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part due to the inconsistency between her allegations of disabling symptoms and the medical evidence in the record. A determination that plaintiff's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). As discussed above, the ALJ did not err in evaluating the medical evidence in the record regarding plaintiff's mental and physical impairments or in finding plaintiff capable of performing a modified range of light work. As such, the ALJ also did not err in discounting plaintiff's credibility for this reason.

The ALJ also noted plaintiff had not pursued the recommendation of Dr. Meagher that she engage in a more structured program for treating her mental impairments. Tr. 34-35, 258. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant"s pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Indeed, other than reporting being on certain medications, such as Prozac and Trazadone (Tr. 216, 244), which had proved effective in the past (Tr. 173, 236), the record indicates that plaintiff has not been active in seeking or following-up on further recommended treatment for her mental impairments. Thus, the ALJ properly discounted plaintiff's credibility for this reason as well.

To determine whether a claimant's symptom testimony is credible, the ALJ also may consider his or her daily activities, as he did here with plaintiff. Tr. 36, 40; Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. Here, although the evidence in the record regarding plaintiff's

ability to engage in activities of daily living is mixed, the undersigned cannot say that the ALJ erred in discounting plaintiff's credibility for this reason.

Plaintiff told Dr. Elliott that she bathed, dressed herself and fixed three meals every day. Tr. 245. She also reported doing all of the laundry, cleaning and shopping, albiet with help and by doing "little bits at a time." Id. Although plaintiff reported "losing energy after only a few hours or chores" in late October 1998, she reported in late December 1998, that she had been "very busy with the holidays" during the past week, and had not had "enough sleep or rested" her back when she was fatigued. Tr. 181, 188. Plaintiff also was noted to be able to walk up to a distance of almost two miles at a time at a speed of nearly three miles per hour on the treadmill. Tr. 181. She even ended physical therapy, stating that she could "manage her symptoms on her own with her home exercises and walking program." Id. In mid-December 2000, plaintiff was noted to be "back to normal activities." Tr. 332.

Thus, although plaintiff has reported being very limited in her activities of daily living, the ALJ did not err in finding her to be more active in those areas than she has alleged. To the extent the ALJ may have erred in relying on plaintiff's activities of daily living to discount her credibility, furthermore, the fact that one of the reasons for discounting her credibility should properly be discounted, does not render the ALJ's determination on this issue invalid, as long as that determination is supported by substantial evidence, as it is here. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

IV.  The ALJ Did Not Err in Evaluating the Lay Witness Statement in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff implies, but does not so expressly state, that the ALJ erred in discounting the statement in

1    the record from her former employer regarding her ability to work. Her former employer stated that he felt
2    plaintiff's work "during her partial disability" had been "fully worth her salary," and that she "was entirely
3    capable of carrying out all major duties of her job for the limited amount of time she could sit in a chair each
4    day." Tr. 129. He also expressed his opinion that plaintiff was "incapable of working" after her last surgery,
5    that prior to that surgery he had "personally observed her on more than one occasion working at her desk in
6    tears," and that she "was clearly in a great deal of pain." Id.

7    With respect to this statement, the ALJ found that although the characterization of plaintiff and her
8    symptoms by her former employer "may have been accurate at the time" of writing (late September 1999),
9    medical evidence in the record dated subsequent to that period did not support that characterization. Tr. 39.
10   Because, as discussed above, the ALJ properly evaluated the medical evidence in the record regarding
11   plaintiff's impairments and properly found her capable of performing a modified range of light work, and
12   because the ALJ may discount lay witness testimony if it is inconsistent with the medical evidence in the
13   record, the ALJ did not err in rejecting the statement of plaintiff's former employer for this reason.

V.    The ALJ Properly Found Plaintiff Capable of Performing Her Past Relevant Work

15   An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical
16   posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d
17   1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the
18   medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).
19   Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by
20   the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that
21   description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)
22   (because ALJ included all limitations that he found to exist, and those findings were supported by
23   substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

24   At the hearing, the ALJ had the vocational expert consider a hypothetical question that mirrored the
25   description contained in the ALJ's assessment of plaintiff's residual functional capacity. Tr. 383-84. Based
26   on that hypothetical question, the vocational expert testified that plaintiff could still perform her past
27   relevant work. Tr. 384. Plaintiff argues that the hypothetical question was inadequate, because it did not
28   include all of her mental and physical limitations. As discussed above, however, the ALJ did not err in

evaluating the medical evidence in the record, in assessing plaintiff's credibility, in rejecting the lay witness statement in the record, or in assessing plaintiff's residual functional capacity. As such, the ALJ also did not err in posing the hypothetical question that he did to the vocational expert.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 29, 2005**, as noted in the caption.

DATED this 16th day of September, 2005.

                                              s/Karen L. Strombom
                                              Karen L. Strombom
                                              United States Magistrate Judge